UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JORDAN J. GADSON,

        Petitioner,

vs.                                       Case No. 3:17-cv-1377-J-20PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

**ORDER**

**I.  INTRODUCTION**

In his Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1), the pro se Petitioner, Jordan J. Gadson, is challenging his state court (Duval County) conviction for murder in the first degree. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 20).[1]  The Court advised Petitioner and gave him an opportunity to file a reply.  See Order (Doc. 6).  Petitioner, in response, filed a Notice (Doc. 22) stating he would not be filing a reply but would rely on the claims raised in his Petition.

_____

[1] Respondents filed an Appendix (Doc. 20).  The Court will refer to the Exhibits in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the document will be referenced.  For the Petition and Response, the Court references the page numbers assigned by the electronic filing system.

## II.   EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).   To be entitled to an evidentiary hearing, the petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir. 2020) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 2020 WL 5883300 (U.S. Oct. 5, 2020).   See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing.   Martin, 949 F.3d at 670 (quotation and citation omitted).   In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief.   Therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

### III.   HABEAS REVIEW

In the Petition, Petitioner claims he is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "prescribes a deferential framework for evaluating issues previously decided in state court[,]" Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted), petition for cert. filed, (U.S. Nov. 6, 2020), limiting a federal court's authority to award habeas relief.  See 28 U.S.C. § 2254; Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").  This limitation is recognized by the Eleventh Circuit:

> [federal courts] are prohibited from granting a state prisoner's habeas corpus petition unless the relevant state court decision on the merits of the petitioner's claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

James v. Warden, Holman Correctional Facility, 957 F.3d 1184, 1190 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(d)(1)-(2)).  Further, federal court review is very narrow and limited as follows:

> A decision is "contrary to" clearly established federal law if the state court applied a rule that contradicts governing Supreme Court precedent, or if it reached a different conclusion than the Supreme Court did in a case

3

involving materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if the court identifies the correct legal principle but applies it unreasonably to the facts before it. Id. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 167 L.Ed.2d 836 (2007).

James, 957 F.3d at 1190-91.

A state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)). As such, a federal district court may not supersede a state trial court's determination simply because reasonable minds may disagree about the finding. Id. (quotation and citation omitted).

Of import, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020). In order for this Petitioner to prevail on a claim of ineffective assistance of trial counsel, he must satisfy the two-pronged Strickland test, requiring he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Id. (quotation and citation omitted). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

## V.   GROUND ONE

GROUND ONE:

The jury instructions given at Petitioner's trial constituted a constructive amendment of the indictment, in violation of Petitioner's Sixth Amendment rights.

5

Petition at 3 (capitalization omitted).

Petitioner complains that despite his objection, the trial court instructed the jury on felony murder and as a principal, although the indictment charged Petitioner with premeditated murder as the shooter, with no reference to felony murder or other crime. Id. at 4. He notes, the jury returned a verdict of guilty to first degree murder but found Petitioner did not possess or discharge a firearm. Id. Petitioner contends that "[a]ll of the witnesses" testified Petitioner was the shooter whereas he testified he was the driver and thought his co-defendants "might have been wanting to commit a robbery." Id.

The record demonstrates the following. The Indictment charged that Petitioner, on or between January 22, 2007, and January 23, 2007, "unlawfully and from a premeditated design to effect the death of Reginald Payne, did then and there kill the said Reginald Payne, . . . by shooting him and . . . [Petitioner] carried or had in his possession a . . . handgun, and did discharge a firearm and . . . death or great bodily harm was inflicted . . . [.]" Ex. A at 9. The record shows defense counsel objected to the giving of instructions on felony murder and principals. Ex. B at 732-34. Counsel argued the state's whole case revolves around premeditation and its theory that Petitioner was the shooter. Id. at 732-33. The court ruled:

> [A]s to the principal theory, that has been discussed and my understanding was that they were going on the principal theory, if he wasn't the actual shooter, that he was a principal.

6

Id. at 733-34.   The prosecutor confirmed:   "[t]hat's correct, Your Honor, since there's evidence that there are two gunman and probably two shooters, we've always been going on that theory, even under premeditation."   Id. at 734.

In denying the objection to the felony murder instruction, the court opined:

> And as to the felony murder Indictment, as I'm reading it, the Indictment did not specify either premeditation or felony murder, nor are they required to.   So to the extent that there's any surprise in this case as to that subject, I would have to find that that surprise was caused by your client who through his testimony raised this issue.[2]

Id.

The trial court's instructions included instructions for first degree premeditated murder, felony murder, the law of principals and an independent act. Id. at 815-822.   The jury returned a verdict finding Petitioner guilty of first degree murder while also finding he did not actually possess or discharge a firearm during the commission of the offense.   Id. at 840; Ex. A at 95-96.

---

2 Petitioner changed the theory of his defense, mid-stream, when, on cross examination, he altered his story.   In opening statement, defense counsel told the jury Petitioner was home with his mother. Ex. B at 189.   On direct examination, Petitioner testified he went out in his mother's Dodge Durango around 8:30 or 9:00 p.m. but returned home after about thirty minutes.   Id. at 659.   He testified, after returning home, he did not go out again that evening.   Id. at 659-60.   On cross-examination, Petitioner testified he drove the car at 9:00 p.m.   Id. at 670.   In a surprising move to apparently all concerned, when asked where he was around midnight, Petitioner changed his story and testified he was in the driver's seat of the truck.   Id. at 672-73.   Not only did he admit he was the driver, he testified he had lied to the jury and the detectives.   Id. at 676, 679.   Petitioner said his co-defendants were "probably fixing to rob" the victim.   Id. at 681.   Petitioner admitted he was a principal to robbery.   Id.   On re-direct, Petitioner testified he was the driver of the truck that night and drove his co-defendants home after the shooting.   Id. at 685-86, 689.

On appeal, Petitioner's appointed counsel filed an <u>Anders</u>[3] brief.   Ex. D
Petitioner, in his pro se brief on appeal, claimed the trial court violated his
constitutional right under the Sixth Amendment to be informed of the nature and
cause of the accusation by broadening the jury instructions to include felony murder
and principal instructions when the indictment only alleged premeditation.   Ex. E.
The First District Court of Appeal (1st DCA) affirmed per curiam.   Ex. F.   The
mandate issued April 6, 2009.   Ex. G.

The 1st DCA's decision is entitled to AEDPA deference.   The decision was not
contrary to clearly established federal law, did not involve an unreasonable
application of clearly established federal law, and was not based on an unreasonable
determination of the facts.   Therefore, ground one is due to be denied as AEDPA
deference is due and Petitioner is not entitled to habeas relief.

In the alternative, Petitioner is not entitled to habeas relief on this ground as
it has no merit.   "[T]here is no requirement that the information inform the
defendant that he is being charged as a principal."   <u>Shipp v. Sec'y, DOC</u>, No. 3:09-
cv-266-J-37TEM, 2011 WL 2670007, at *15 (M.D. Fla. July 7, 2011) (citing <u>Roberts v.
State</u>, 813 So.2d 1016, 1017 (Fla. 1st DCA 2002) (per curiam) (concluding, if there is
sufficient evidence to support the instruction, it may be given, even if the defendant
was not charged with aiding and abetting)).   It is immaterial whether the indictment
or information alleges the defendant committed the crime or was merely aiding or

---

3  <u>Anders v. California</u>, 386 U.S. 738 (1967).

abetting in its commission, so long as there is evidence to support the instruction. Badgliacca v. Sec'y, Dep't of Corr., No. 1:09-cv-152-MMP-GRJ, 2012 WL 4477938, at *15 (N.D. Fla. Aug. 7, 2012) (not reported in F.Supp.2d) (rejecting the claim that the giving of the instruction on principals constructively amended the indictment because he was charged with offenses, not aiding and abetting, as there was sufficient evidence presented at trial to support the instruction), report and recommendation adopted by 2012 WL 4477707 (N.D. Fla. Sept. 28, 2012).

There was no unconstitutional constructive amendment of the indictment by the trial court allowing the instruction on felony murder.   In Florida, an indictment which charges premeditated murder, "permits the State to prosecute under both the premeditated and felony murder theories." Dessaure v. Sec'y of Dep't of Corr., No. 2011 WL 6181942, at *31 (M.D. Fla. Dec. 13, 2011) (not reported in F.Supp.2d) (quoting Parker v. State, 904 So.2d 370, 382-83 (Fla. 2005) (per curiam)).   Indeed, the Florida Supreme Court has repeatedly rejected such claims that notice is required in the indictment that a felony murder theory is being pursued.   Kearse v. State, 662 So.2d 677, 682 (Fla. 1995) (per curiam), cert. denied, 532 U.S. 945 (2001).   It is clear, when there is competent, substantial evidence to support the conviction, it may be "under either form of first-degree murder," either felony murder or premeditation. Kirkman v. State, 233 So.3d 456, 470 (Fla. 2018) (per curiam).   As such, Petitioner is not entitled to habeas relief on ground one and it is due to be denied.

## VI.   GROUND TWO

GROUND TWO:

Trial counsel failed to advise Petitioner as to the nature of the offense he was charged with, depriving him of his Sixth Amendment right to counsel.

Petition at 5 (capitalization omitted).

Respondents contend this ground is unexhausted and procedurally defaulted. Response at 32.   Petitioner did not raise this issue in his original Rule 3.850 motion, his amended motion, or his second amended motion.   Respondents argue that Petitioner has not shown cause and prejudice or that a fundamental miscarriage of justice would result if the Court does not reach the merits of this ground.   Id.

This Court should not entertain a federal petition unless the petitioner has first exhausted his state court remedies.   Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982).   A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"   Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).   The doctrine of procedural default requires the following:

> Federal   habeas   courts   reviewing   the
> constitutionality of a state prisoner's conviction and
> sentence are guided by rules designed to ensure that state
> court judgments are accorded the finality and respect
> necessary to preserve the integrity of legal proceedings
> within our system of federalism. These rules include the
> doctrine of procedural default, under which a federal court

will not review the merits of claims, including
constitutional claims, that a state court declined to hear
because the prisoner failed to abide by a state procedural
rule. See, e.g., Coleman,[4] supra, at 747-748, 111 S. Ct.
2546; Sykes,[5] supra, at 84-85, 97 S. Ct. 2497. A state
court's invocation of a procedural rule to deny a prisoner's
claims precludes federal review of the claims if, among
other requisites, the state procedural rule is a nonfederal
ground adequate to support the judgment and the rule is
firmly established and consistently followed. See, e.g.,
Walker v. Martin, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-
1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S.---,
----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The
doctrine barring procedurally defaulted claims from being
heard is not without exceptions. A prisoner may obtain
federal review of a defaulted claim by showing cause for the
default and prejudice from a violation of federal law. See
Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

As there are allowable exceptions to the procedural default doctrine; "[a]
prisoner may obtain federal review of a defaulted claim by showing cause for the
default and prejudice from a violation of federal law[,]"   Martinez, 566 U.S. at 10
(citing Coleman, 501 U.S. at 750), and to demonstrate cause, a petitioner must show
some objective factor external to the defense impeded his effort to properly raise the
claim in state court.   Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied,
528 U.S. 934 (1999).  If cause is established, a petitioner must then demonstrate
prejudice.  To demonstrate prejudice, a petitioner must show "there is at least a
reasonable probability that the result of the proceeding would have been different

---

4 Coleman v. Thompson, 501 U.S. 722 (1991).

5 Wainwright v. Sykes, 433 U.S. 72 (1977).

had the constitutional violation not occurred." <u>Owen</u>, 568 F.3d at 908. In the alternative, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent. <u>Kuenzel v. Comm'r, Ala. Dep't of Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting <u>Schlup</u>, 513 U.S. at 324), <u>cert. denied</u>, 569 U.S. 1004 (2013).

In addressing the question of exhaustion, this Court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. <u>See</u> 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" <u>Baldwin v. Reese</u>, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in <u>Baldwin</u> "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"- namely, giving the state courts "a meaningful opportunity" to address the federal claim. <u>McNair</u>, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state law claim." <u>Kelley</u>,[6] 377 F.3d at

---

6 <u>Kelley v. Sec'y for the Dep't of Corr.</u>, 377 F.3d 1317 (11th Cir. 2004), <u>cert. denied</u>, 545 U.S. 1149 (2005).

> 134-44. Rather, he must make his claims in a manner that
> provides the state courts with "the opportunity to apply
> controlling legal principles to the facts bearing upon (his)
> [federal] constitutional claim." Id. at 1344 (quotation
> omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied,

568 U.S. 1104 (2013).

The record demonstrates Petitioner did not raise the claim of ineffective

assistance of counsel for failure to advise Petitioner as to the nature of the offense he

was charged with in his Rule 3.850 motion, amended motion, or second amended

motion.   Upon review, the Court concludes Petitioner failed to raise this ground in

the state court system.   It is clear from state law that any future attempts at

exhaustion of this ground would be futile.   As such, Petitioner has procedurally

defaulted this ground for relief.   It is significant for purposes of this Court's review

that Petitioner has failed to show cause and prejudice or that a fundamental

miscarriage of justice will result if the Court does not reach the merits of ground two;

therefore, he has not demonstrated he meets the allowable exceptions to the

procedural default doctrine.

In conclusion, the Court finds the claim raised in ground two is unexhausted

and procedurally defaulted.   Petitioner has neither shown cause and prejudice nor

that a fundamental miscarriage of justice will result if the claim is not addressed on

its merits.   Consequently, ground two is due to be denied.

---

## VII.   GROUND THREE

GROUND THREE:

Counsel failed to investigate and present evidence of Petitioner's innocence, and failed to move for mistrial, depriving him of his Sixth Amendment right to counsel.

Petition at 7 (capitalization omitted).

In seeking habeas relief, Petitioner relies on three sub-claims: (1) counsel's failure to impeach Jarel Lewis; (2) counsel's failure to move for a mistrial during Leronnie Walton's testimony as he committed perjury on the stand; and (3) counsel's failure to call witnesses (Arial Swan; Deanna Duffy; Derwin Lembrick; witnesses to impeach Crystal Jones, like Detective B. F. Bowers, Devon Jones, and Anthony McClain; Stephen Keeling; several witnesses staying in Petitioner's mother's apartment to corroborate Jasmine Graham's and Petitioner's testimony that Jarel Lewis was in the apartment the night of the shooting and therefore he did not testify truthfully when he said he saw Petitioner get out of the vehicle with a gun and run after the victim).   Petition at 14-18.

Upon review of the state court record, Petitioner exhausted this claim of ineffective assistance of counsel by raising it in his second amended Rule 3.850 motion.   Ex. H at 221-24.   The trial court, after incorporating the argument and references set forth in the state's response, denied the claim of ineffective assistance of counsel.   Id. at 238-41.   Notably, the state's response referenced the two-pronged Strickland standard.   Id. at 134-35.   The 1st DCA affirmed the decision of the trial court.   Ex. K.

**SUBCLAIM ONE:** counsel's failure to impeach Jarel Lewis.

Petitioner complains his counsel's performance was constitutionally deficient because he did not play Lewis's taped statements for the jury and present a false confession expert to analyze the tapes.   Petition at 7.   Petitioner contends a false confession expert would have aided the jury by identifying "the specific tactics that might lead someone . . . to confess to something he did not do, and to accuse his friend of something *he* did not do, simply to get the police to stop the interrogations."   Id. Petitioner submits that Mr. Lewis did not change his story that he was at the apartment until the detectives made "relentless threats of perjury and inducements[.]"   Id. at 8.

Petitioner concedes that counsel did impeach Mr. Lewis with some of the inconsistencies in his statements, but Petitioner argues his counsel could have done more with the videotaped confessions and sworn statement, including calling in a false confession expert.   Id. at 12.   Petitioner argues, since Mr. Lewis was a critical witness for the state, trial counsel should have made more of an effort to discredit his testimony, asserting there was a reasonable probability that without Mr. Lewis's testimony, the outcome of the trial would have been different.   Id.   As such, Petitioner complains that counsel's performance was constitutionally deficient.

As noted above, Petitioner exhausted this ground by raising it in his second amended Rule 3.850 motion, and the circuit court denied the motion.   The 1st DCA affirmed without an opinion and explanation.   Ex. K.   The Court presumes the

appellate court adjudicated the claim on its merits, as there is an absence of any indication of state-law procedural principles to the contrary.

Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying relief.   The state has not rebutted this presumption. Accordingly, the Court concludes AEDPA deference is warranted.

Since the last adjudication is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief.   He has failed in this endeavor.   Thus, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts.   As such, sub-claim one is due to be denied.

Alternatively, the Court finds counsel performed reasonably, well within the scope of permissible performance.   Perfection is not the standard, and in this case, defense counsel effectively cross examined Mr. Lewis.   Ex. B at 578-99.   On cross examination, Mr. Lewis admitted he made a deal with the prosecutor that the greatest sentence Mr. Lewis would receive would be fifteen years.   <u>Id</u>. at 579.   On further examination, Mr. Lewis said he wanted to get out of jail and hoped, after testifying, he would get probation or time served.   <u>Id</u>. at 580.   Additionally, Mr. Lewis admitted that as part of his deal with the state, he would have to testify against Petitioner.   <u>Id</u>.   Thus, defense counsel effectively showed Mr. Lewis was motivated to testify as he did to obtain a deal that would get him out of jail.

16

Defense counsel also cross-examined Mr. Lewis about his previous sworn statements, although counsel did not "play" the taped statements for the jury, as Petitioner suggests he should have done. Id. at 584. During extensive cross examination, defense counsel inquired as to how Mr. Lewis did not tell the detectives during his previous statement he was in the car with Petitioner around midnight until after an hour or two of the interrogation. Id. at 586. Mr. Lewis agreed that the detectives talked about "the fear factor" and placed Mr. Lewis in a room with Mr. Gadson. Id. at 586-87. Mr. Lewis testified he was scared and nervous during the lengthy interrogation. Id. at 587. Upon inquiry, he stated there was no plan the night of the offense. Id. at 589. Of interest, Mr. Lewis said Mr. Swain never fired his gun, although the physical evidence showed two different weapons were fired during the offense. Id. at 591-92. Also, Mr. Lewis offered no explanation as to why he had gun residue on his hands. Id. at 594. After in-depth questioning by defense counsel, Mr. Lewis admitted he changed his story and lied to the police. Id. at 595. Finally, Mr. Lewis described Danny Newton as being of similar height as Petitioner and having a similar low haircut. Id. at 598-99.

The record demonstrates defense counsel adequately questioned Mr. Lewis, attempting to discredit his testimony. Not only did defense counsel bring out the fact that Mr. Lewis's story morphed and changed as he was interrogated, counsel effectively showed Mr. Lewis was motivated to testify against Petitioner to receive a beneficial deal from the state.

17

In conclusion, defense counsel's performance did not fall below an objective standard of reasonableness for failure to play the taped statements as counsel thoroughly and effectively cross examined Mr. Lewis about his previous statements to the detectives.   Indeed, counsel was able to bring out the weaknesses in Mr. Lewis's trial testimony.   Defense counsel also managed to effectively attack Mr. Lewis's credibility and veracity through cross examination.

Under these circumstances, defense counsels' performance cannot be deemed deficient for failure to conduct a more vigorous cross examination or for failure to play the taped statements for the jury.   Although every attorney may not have chosen the same approach or strategy, Petitioner's counsel's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial.   Petitioner has failed to establish that no competent counsel would have conducted the cross examination as defense counsel did in this trial.   The Court concludes Petitioner has failed to satisfy the Strickland requirements and he is not entitled to habeas relief on sub-claim one.

As for any failure to hire and present a false confession expert, Petitioner does not satisfy the performance or prejudice prong of Strickland.   Petitioner has not overcome the strong presumption that any decision to forego obtaining an expert to testify on the falseness of Mr. Lewis's testimony fell within the wide range of professional competence.   Moreover, even if a false confession expert had testified, "such would not have significantly diminished the incriminating effect of the other evidence." Simmons v. State, 105 So.3d 475, 493 (Fla. 2012) (per curiam).   Simply,

Petitioner has not shown that counsel's performance at trial was deficient in failing to present a false confession expert, nor has Petitioner demonstrated a reasonable probability that, had trial counsel presented an expert on false confessions, the verdict would have been altered such that the probability was sufficient to undermine the Court's confidence in the result as the evidence against Petitioner was strong and confirmed by his own testimony on cross examination when Petitioner changed his own story to admit he was the driver of the vehicle and he thought his cohorts may be going to rob the victim.   As such, sub-claim one is due to be denied.

**SUBCLAIM TWO:**  counsel's failure to move for a mistrial when Leronnie Walton committed perjury on the stand.

As previously noted, Petitioner exhausted this ground by raising it in his second amended Rule 3.850 motion, and the circuit court denied relief.   The 1st DCA affirmed without an opinion and explanation.   Ex. K.   As there is an absence of any indication of state-law procedural principles to the contrary, the Court presumes the appellate court adjudicated the claim on its merits.   The state did not rebut this presumption.   It follows that, pursuant to <u>Wilson</u>, the Court assumes the 1st DCA adopted the reasoning of the trial court in denying relief.   As such, the Court applies AEDPA deference to the 1st DCA's decision.

Since the last adjudication is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief.   He has not done so; therefore, the Court finds the state court's adjudication

of this claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts.   Thus, sub-claim two will be denied.

Alternatively, the Court finds this claim has no merit.   Leronnie Walton was called by the state, but he proved to be a witness that was easily discredited as exhibited by his ever changing story.   On direct, Mr. Walton attested Petitioner had a gun that night and he shot the gun.   Ex. B at 258-59, 264-65.   Mr. Walton also testified that about a week before trial, he spoke with Arial Swan or Dianna Duffy and told them a different story.   <u>Id</u>. at 271-72.   Mr. Walton explained he told the ladies Petitioner did not do it.   <u>Id</u>. at 272.   When asked if he told the women the truth, Mr. Walton said he did not know.   <u>Id</u>.   Mr. Walton said he was scared for somebody else.   <u>Id</u>. at 273.   Defense counsel objected to the prosecutor's question about Mr. Walton's fear, and defense counsel asked that the testimony be proffered as counsel had just received this information through the state's supplemental disclosure with the names of the two women listed.   <u>Id</u>.   The state agreed to flesh out Mr. Walton's testimony through a proffer.   <u>Id</u>.   Eventually, he said he was scared for his "baby's momma."   <u>Id</u>. at 275.

An examination on proffer followed.   <u>Id</u>. at 275-77.   Mr. Walton testified on proffer that he told the two women Petitioner did not do it so the women would leave him alone.   <u>Id</u>. at 275-76.   On cross examination, still on proffer, Mr. Walton testified the women did not pester him and he did not lie to them, he just "told them what [he] told them[.]"   <u>Id</u>. at 277.   Thereafter, on cross examination, Mr. Walton's testimony changed again, and this time he said he never talked to the two women

and he just spoke with his "baby's mother[.]"   Id. at 288.   Later, Mr. Walton reiterated that he did not talk with Arial Swan and Deanna Duffy.   Id. at 317.

The jury witnessed Mr. Walton's conflicting statements, and the record shows the jury disbelieved Mr. Walton's testimony that Petitioner shot a gun the night of the offense, as exhibited by the jury's verdict that Petitioner did not possess a firearm during the commission of the offense.   Ex. A at 95-96.   There is no reasonable probability that Mr. Walton's testimony affected the judgment of the jury that Petitioner shot and killed the victim as the jury flatly rejected this testimony of Mr. Walton.

The record demonstrates Petitioner's performance was reasonable.   Counsel quickly objected when Mr. Walton said he was scared for someone else.   The state agreed to proffer his testimony on the subject.   Thereafter, through his cross examination of Mr. Walton, defense counsel convinced the jury that Mr. Walton's testimony was not just circumspect, it was not substantially worthy of belief.   As such, defense counsel's performance was not constitutionally deficient for failure to move for a mistrial or to strike Mr. Walton's testimony, and Petitioner has failed to satisfy the performance prong of Strickland.   Furthermore, Petitioner has failed to show a reasonable probability that the outcome of the proceeding was negatively affected by counsel's performance.   Consequently, he has failed to satisfy the prejudice prong of Strickland.   Confidence in the outcome of the proceedings has not been undermined and Petitioner is not entitled to habeas relief on this ground.

21

**SUBCLAIM THREE:**   counsel's failure to call witnesses.

Petitioner exhausted his state court remedies by raising this claim in his second amended Rule 3.850 motion, and after the circuit court denied relief, appealing the matter to the 1st DCA.   The 1st DCA summarily affirmed the trial court's decision.   Ex. K.   The state court's decision is entitled to AEDPA deference as it is not inconsistent with Supreme Court precedent, the adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.   Giving AEDPA deference, as this Court should, the Court finds Petitioner is not entitled to habeas relief.

Upon review of the record, counsel's performance fell well within the broad range of reasonable assistance under prevailing professional norms.   The decision as to whether to present witness testimony is a strategic one, left within trial counsel's domain.   Chaflin v. Sec'y, Dep't of Corr., No. 6:09-cv-2055-Orl-31KRS, 2011 WL 280940, at *3 (M.D. Fla. Jan. 26, 2011) (not reported in F.Supp.2d).   Counsel is given wide latitude in making strategic decisions, and in this instance, counsel's performance did not fall outside the norm.   Thus, the performance was not constitutionally deficient under these circumstances and Petitioner is not entitled to habeas relief.

The purported witnesses in question are Arial Swan, Mr. Walton's sister-in-law; Deanna Duffy, Mr. Walton's mother-in-law; Derwin Lembrick; B. F. Bowers; Devon Jones, Kevin Jones' brother; Anthony McClain; Officer Steven Keeling;

Samuel Stinson; Telvin Kennedy; D. J. Gordan; and Immanuel Williams.   Petition

at 14-18.   The circuit court, in denying the post-conviction motion, opined:

> In its response to Defendant's motion, the state
> addressed each claim in Defendant's Amended Motion for
> Postconviction Relief.   This Court has reviewed
> Defendant's Amended Postconviction Motion and Second
> Amended Postconviction Motion, as well as the state's
> Response, and concludes that the state has demonstrated,
> by its legal argument and references, that the record
> refutes Defendant's claims.   When viewed in the context
> of the entire record, each allegedly deficient act by counsel
> appears reasonably calculated to advance a legitimate
> interest of Defendant or not to have resulted in prejudice.
> **This Court incorporates the argument and
> references set forth in the state's Response** and
> attaches portions of the record to support the state's
> references.

Ex. H at 240 (citations omitted) (emphasis added).

Since the state court incorporated the argument and references from the state's

Rule 3.850 response, this Court too will look to that response.   It reads:

> Counsel claims that trial counsel was deficient for
> failing to call Arial Swain and Deanna Duffy, who each
> would have testified that Leronnie Walton told them that
> Jordan Gadson did not shoot Reginald Payne.   Walton had
> already testified that he told Swain and Duffy that Jordan
> was not the shooter.   The Motion claims to know
> additional facts regarding what Ms. Swan and Ms. Duffy
> would have testified to at trial, but there are no attached
> affidavits or other evidence to establish the substance of
> M[s]. Swain's or Ms. Duffy's testimony.

> Counsel alleges Mr. Eler should have called Derwin
> Lembrick about his knowledge of the shooting.   There is
> no allegation that trial counsel was given information
> regarding Derwin Lembrick, and the substance of the
> Defendant's direct examination suggests that the
> Defendant never told his attorney about Derwin Lembrick

23

as a witness. The Defendant's Motion then contradicts itself; in the earlier allegation regarding newly discovered evidence, the Defendant alleged "Lembrick likely would have tried to avoid speaking about the crime because of his close friendship with Danny." (Def's Amended Motion at 18). In the present ineffective assistance of counsel allegation, "Lembrick would have spoken with trial counsel had he been approached." (Def's Amended Motion at 29). Mr. Gadson cannot have it both ways: Derwin Lembrick's testimony either was discoverable at the time, or it was not.

Ex. H at 138.

The court continued:

Counsel claims Mr. Eler should have called Detective Bowers to show an inconsistency in witness testimony of Crystal Jones. To obtain a hearing on this matter, the Defendant's burden is to show what testimony counsel would have elicited from the witness and how the failure to present that testimony prejudiced the defendant. Nelson v. State, 875 So.2d 579, 583 (Fla. 2004). On the stand Mrs. Jones stated she was "positive" about "what [she] heard Mr. Payne say that night to [her]." (Trial Tr. at 208). Detective Bowers' report states that Mrs. Jones "believed" that she heard the Victim say the name "Jordan." The Defendant has not indicated to what extent Detective Bowers could have elaborated on this point, or how it is truly inconsistent between Mrs. Jones saying she "believed" or she was "positive" that the Victim had said the name Jordan.

Ex. H at 138-39.

Finally, the court concluded with the following:

Defense Counsel claims Mr. Eler should have called Devon Jones, or multiple other witnesses in the defense case. Failure to present cumulative testimony, or failure to present every person who has knowledge of an event does not rise to the level of ineffective assistance of counsel. Coleman v. State, 718 So.2d 827, 829 (Fla 4th DCA 1998), citing Jennings v. State, 583 So.2d 316, 321 (Fla. 1991).

Regarding the failure to call witness Devon Jones, there is no indication he would have done anything but reiterate Kevin Jones' testimony. Kevin Jones stated that his mother, Crystal Jones, was never close enough to the Victim to hear what he said. (Trial Tr. at 634). This effectively impeached Crystal Jones and there is no affidavit or record evidence that Devon Jones would have testified in a way that elaborated on what Kevin Jones testified.

The defense called Jasmine Graham to testify that Jarel Lewis never left the house the entire night. (Trial Tr. at 635-38). The additional witnesses listed in the Defendant's motion would have testified similarly, and would have been cumulative. See Coleman, 718 So.2d at 829. Even had these additional witnesses testified about where Jarel Lewis was the night of the murder, it would not have impacted the verdict. Again, the verdict reflects the very real possibility that the jury disbelieved Jarel Lewis, so further impeachment against him would not have produced a different result at trial.

Ex. H at 139.

The Court is not convinced that failure to call the witnesses suggested by Petitioner amounted to deficient performance. With regard to Arial Swain and Deanna Duffy, Mr. Walton testified on direct that he told them Petitioner was not the shooter. Their testimony would have simply reiterated this information. Devon Jones' testimony would have reiterated his brother's testimony that the brothers did not hear the victim say the name Jordan and Crystal Jones was not close enough to hear the victim speak. The additional witnesses listed who were inside Petitioner's mother's house would have contributed cumulative testimony to Jasmine Graham's testimony. To the extent Detective Bowers could have said Crystal Jones said she believed the victim said the name Jordan compared to Ms. Jones' trial testimony that

she was positive she heard the name Jordan would also have amounted to cumulative testimony, and if not cumulative, not entirely inconsistent. Thus, any failure to call Detective Bowers did not fall below the broad range of reasonable assistance under prevailing professional norms.

Finally, any failure of counsel to call the additional witnesses listed by Petitioner did not deprive Petitioner of his Sixth Amendment right to effective assistance of counsel. Indeed, the failure to present corroborating evidence does not amount to deficient performance of counsel. Haag v. Sec'y, Dep't of Corr., No. 8:14-cv-1794-T-35AEP, 2017 WL 6550884, at *14 (M.D. Fla. Sept. 25, 2017) (not reported in F. Supp.) ("Failure to present cumulative evidence is not ineffective assistance of counsel.") (citation omitted). See Reaves v. Sec'y, Fla. Dep't of Corr., 872 F.3d 1137, 1157 (11th Cir. 2017), cert. denied, 138 S. Ct. 2681 (2018) (same). As such, the decision not to call witnesses that would have provided cumulative testimony was not so patently unreasonable that no competent attorney would have made that decision.

The circuit court's decision shows the court was not convinced Petitioner had told his counsel about Derwin Lembrick or the fact that Mr. Lembrick was a witness at the scene. The court referenced Petitioner's testimony on direct examination which supported the court's conclusion that Petitioner never told his attorney about Mr. Lembrick as a potential witness as Petitioner, on direct examination, insisted he was not present at the scene of the crime and was at his mother's house at that time. Therefore, the defense's theory of the case had been Petitioner was not present at the

scene of the crime at the time of the offense and the defense would not have called someone to state he was present.

The Court finds the state court's determination is consistent with federal precedent. The 1st DCA's decision, although unexplained, is entitled to AEDPA deference. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. In short, the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts. Thus, sub-claim three is due to be denied.

## VIII.   GROUND FOUR

GROUND FOUR:

> Cumulative effect of counsel's deficient performance, [sic] deprived him of his Sixth Amendment right to counsel.

Petition at 19 (capitalization omitted).

Petitioner asserts, combining all of his claims of ineffective assistance of trial counsel, the alleged deficiencies, as a whole, amount to ineffective assistance of counsel. Id. Generally, Petitioner exhausted this ground in the state-court system.[7] Ex. H at 186-87. The circuit court denied relief. Id. at 238-40. The 1st DCA affirmed. Ex. K.

---

[7] The record demonstrates Petitioner did not raise the claim of ineffective assistance of counsel for failure to advise Petitioner as to the nature of the offense he was charged with in his Rule 3.850 motion, amended motion, or second amended motion; therefore, as it was not presented to the court, the circuit

To the extent Petitioner exhausted this claim in the state court system, the decision of the 1st DCA is entitled to deference.   This Court will "look through" the unexplained decision of the 1st DCA to the circuit court's decision denying post-conviction relief, assuming the unexplained decision adopted the same reasoning as the circuit court.   This Court presumes the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication of state-law procedural principles to the contrary.   Since the last adjudication is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief.   He has failed to do so.   The Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on this claim of cumulative error of counsel.

After considering the grounds raised in the Petition, this Court finds the state court decision passes AEDPA muster as singularly or cumulatively, the proposed deficient conduct does not meet the Strickland standard and the records shows Petitioner was not deprived of a fair proceeding.   Therefore, Petitioner is not entitled to habeas relief on this ground.

Alternatively, after a thorough review of the record and the pleadings, Petitioner has not demonstrated any of his trial counsel's alleged errors, considered alone, rise to the level of ineffective assistance of counsel; therefore, there are no

---

court did not address that particular claim of ineffective assistance of counsel.

errors to accumulate, and Petitioner is not entitled to habeas relief.  See Spears v. Mullin, 343 F.3d 1215, 1251 (10th Cir. 2003) (when the sum of various zeroes remains zero, the claim of prejudicial effect of cumulative errors is nil and does not support habeas relief), cert. denied, 541 U.S. 909 (2004).  As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his trial was fundamentally unfair and his counsel ineffective.  Moreover, the Court finds Petitioner has not shown specific errors which undermine the conviction in their cumulative effect; therefore, he has failed to demonstrate prejudice.

Upon consideration of the entire record before the Court, the Court finds Petitioner failed to present sufficient separate and individual ineffective assistance of counsel claims; therefore, even considered cumulatively, his assertions do not render the claim of ineffective assistance of counsel sufficient.  Robertson v. Chase, No. 1:07-CV-0797 RWS, 2011 WL 7629549, at *23 (N.D. Ga. Aug. 12, 2011) (not reported in F.Supp.2d) (citations omitted), report and recommendation adopted by 2012 WL 1038568 (N.D. Ga. Mar. 26, 2012), aff'd by 506 F. App'x 951 (11th Cir. 2013), cert. denied, 571 U.S. 842 (2013).  Consequently, Petitioner is not entitled to habeas relief on this Sixth Amendment claim.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.      This action is **DISMISSED WITH PREJUDICE**.

3.      The **Clerk** shall enter judgment accordingly and close this case.

4.   If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability**.[8]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this _19th_ day of November, 2020.

_____
UNITED STATES DISTRICT JUDGE

sa 11/17
c:
Jordan J. Gadson
Counsel of Record

---

[8]  This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.